Case number 3-17-0085. People of the State of Illinois at the lead by Councilor Aredo v. Tavares v. Veazy. Appellant by James Waxman. Mr. Waxman. Good afternoon Your Honor. I please the Court, Counsel. My name is James Waxman with the State Appellant Defender's Office, and I represent the defendant in this matter, Tavares Veazy. Your Honor, as we raise two issues in our brief, I will be covering both of those today. Starting with the first, as one of my clients is not present during individual lawyer sessions in the Court's chambers. Mr. Veazy was charged with residential burglary. He was suited to a jury trial. At that jury trial, the trial court announced that it was the Court's policy that when a juror was to be questioned individually outside the presence of the other jurors, that would occur in chambers. That occurred five times during Mr. Veazy's trial. Present at all of those individual lawyer sessions was the defendant's counsel, the prosecutor of the trial court, the court reporter, but the defendant was not present at any of those public and individual lawyer sessions. Four of those jurors were ultimately removed by the Court for various reasons. One of those jurors did serve on Mr. Veazy's jury. Before she was brought into chambers, this juror was asked a question by the Court whether or not she could treat the testimony of all witnesses equally, including police officers, to which she responded, none. She was brought back into chambers, and the trial court first spoke with her, saying that the answer that she gave in court would seem to disqualify her as being able to serve on the jury. She claimed that she did not understand the Court's questions. She agreed with the Court that she would not give any advantage to any specific witnesses. The defendant's counsel then asked about her sons, who she said were police officers. She then was asked whether or not she would treat the testimony of any witnesses, any police officers, different from the defendant's counsel, to which she didn't directly answer that question. She said that she raised her sons to be fair and impartial and to treat those values of her household. She said that everybody should be treated equal, regardless of race, creed, or gender. She specifically addressed whether a police officer's testimony should be valued any more than any other witness, or be found more credible. The jury was ultimately selected, which included this juror. They were sworn in and hired to be jurors. It was at that point where the record finally addressed the defendant's lack of presence in chambers. The Court indicated that there was a conversation between itself and the prosecutor and the defendant's counsel, though that conversation is not on the record, at which point the defendant's counsel said that she had waived the defendant's presence in chambers. And the Court actually said, is that correct, counsel? You've given up your right to the defendant's counsel, but never specifically addressed the defendant himself who was sitting in court, never asked at all whether or not the defendant himself had given up his right to be present in chambers there. Ultimately, the defendant was found guilty by the jurors, including this juror. The defendant has the right to be present at all critical stages of his or her trial, and that includes the lawyer, and that includes individual lawyer sessions in the court chambers. What the Bennett case here, and from this Court, has held that when it occurs where the defendant is not in that individual lawyer session, it's error to show that the court that served to convict the defendant was impartial. And what the first part of the argument here is that the jury that convicted Mr. Beezy was not impartial. The reason for that is that the juror, the server, said openly in court that she couldn't treat witnesses' testimony the same as police officers and other witnesses. She seemed to backtrack that unequivocal statement back in chambers when confronted by the judge about her response. However, when directly asked by defense counsel, she never said that she would treat police officers' testimony different than any other witness, and there were multiple police officers that testified in this trial. So I believe that it was, the defendant had the right to be at his or back in chambers. It was error for him not to be allowed to be there, and the jury was prejudiced against him. What about the waiver? What about the counsel's statement? What I would state is that the Bennett Court, which says that a waiver's defendant's presence can only be done if it's done, quote, voluntarily, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences, I think what the Bennett Court, if I'm not correctly saying, is that that requires the defendant himself to be addressed by the court to waive his presence in terms of even personal right that cannot be waived by counsel. There's no case holding that, is there? There's no case holding that last statement, is there? No. I believe that there are other cases that I've cited in my brief that would hold someone, this is a personal right that cannot be waived. How many rights can your attorney in a criminal case waive? I don't understand the question. Can a defense lawyer waive rights of the client in a criminal case? With the defendant's permission. With some exceptions. With some exceptions. For instance, a guilty plea, if the counsel stops up and says, the client's being a guilty, the court never addresses the defendant. That wouldn't fly. That would not work. Correct. And I think that that should hold here as well. And it's not that difficult and important for the court to ask Mr. Easy or any defendant whether or not he waives his presence to be there. The record's also silent as to why this procedure had to even exist in the first place, why the rest of the jury couldn't have been discharged, and Mr. Easy couldn't have been asked to still remain in court or Mr. Easy himself go back to the court's chambers.  Yes, Your Honor. Okay, when you pick a jury, can you have them popping up, going back in chambers, back and forth frequently when you're doing the voir dire? Yes, Your Honor. You know, about every third juror? I mean, that's time-consuming, isn't it? It is, Your Honor. I can only speak for in Rock Island County where I practiced, and it was the usual practice to bring the jurors back in the chambers, but in every scenario the defendant was brought back as well. But, I mean, they did it chambers, didn't they? Correct, yes. Rather than popping them up, popping them down, popping them up, popping them down. I can understand that there's some logistical concerns by the court and time constraints about moving the jurors in and out, but ultimately the Constitution won't protect you. Well, I understand that you're making a constitutional argument, but when you were talking about your uncertainty, why that even happened, you know, you would go back in chambers. Correct. That's not an uncommon occurrence just because of the logistics. It's not an uncommon occurrence that individual voir dire sessions occur in chambers. I would say that it's not an unusual occurrence, but in terms of chamber law it's not present. Yeah, well, we don't have a percentage of how many do it this way, how many do it some other way. I have no idea of the statistics on that. Again, I think that there was error here. I think there was structural error because of the impartial jury. I think this court could also reach this issue if it was not preserved by trial counsel under a closely balanced plenary argument as well. I'll get more into the closely balanced evidence in my second argument because it's more intertwined with that issue. And also, the defendant proceeded in the back of the assistance of counsel. There was no tactical trial reason for the defendant to not be present with his counsel assisting in the voir dire to determine which corrective strikes should be issued by the defendant. So it was not a rational trial strategy, and the defendant suffered prejudice, and that prejudice was that the juror question ended up on the jury, and she demonstrated both in her open court statement and back in chambers that she could not be an impartial juror. So we'd ask that the court find that it was error for the defendant to not be brought back in the chambers if he's denied the right to be present at a critical stage of his trial and to reverse his conviction or remain in this matter for further proceedings. Moving on to my second issue, and I'll post the questions on the first issue that come up again. A quick recap of the evidence might be useful here. The victim in this case, Mr. White, goes and comes home and sees his apartment door ajar, steps in, sees the person run out, knows that person that he's seen around the apartment complex before, but doesn't know the name of this person. That person runs away, has nothing in his hands. As he enters the apartment, there's a second person there. They kind of struggle. That person is forced out of the apartment, at which point Mr. White goes and locks his door. He's able to call the police. The police arrive. They find no forensic evidence, no fingerprints, no DNA, no other evidence of who these people were from Mr. Vitekdo's apartment. Nothing is missing from Mr. Vitekdo's apartment, although some of his possessions have been moved and kind of piled in the living room, and he did not place them there. Mr. Vitekdo has shown two photo line-ups. The first photo line-up contained the defendant's photograph and identified the defendant as the first person he was running out of his apartment. He's shown a second line-up. He did not identify anyone in that line-up. Detective Mahan testified he was the one who put the line-ups together. He testified how the defendant, as he sees his photograph, ended up in that first line-up. He stated that Officer Robinson was the first officer to arrive on the scene. She spoke with the apartment manager. She spoke with the person who lived below the front of Mr. Vitekdo's apartment, who identified herself as Tatiana Beese, the defendant's sister, and that she stated that Mr. Beese lived with her on occasion, or stayed with her on occasion. At this point, the defense counsel objected, stated that it was hearsay. Each state said that this was a case of not hearsay, but I don't know if there's any exceptions to the hearsay rule based on the investigation techniques or steps of the police as to why the photograph ended up in the line-up. The state court overruled the defense counsel's objection. And then later on, after Detective Mahan began reiterating information about Mr. Beese, the sister living below Mr. Vitekdo, gave a limiting instruction, but my argument is the limiting instruction did not go far enough. The court said that this information is not to be considered that Mr. Beese lived or stayed at the apartment below Mr. Vitekdo. It gave no limiting instruction that it was the defendant's sister who lived below Mr. Vitekdo. Two minutes, please. I believe that this was a hearsay, this is a hearsay statement, and the investigation exception should not apply because they wanted the statement as an actual context and heart of the statements, rather just a simple explaining, we talked to witnesses, and we happened to know the name, what's that name of that photograph in the line-up. The evidence here is closely balanced. Mr. Vitekdo is the only witness that places the defendant at the scene of the burglary. There are no other witnesses. He doesn't know who the defendant is. And what occurs here is that the jury, coupled with the information in Mr. Vitekdo's testimony, and now that it's the defendant's sister that lives below Mr. Vitekdo, corroborates Mr. Vitekdo's original defense and his ability to observe who ran out of his apartment. The defendant also suffered prejudice. They received ineffective assistance from counsel. There was no reason why his counsel shouldn't have objected to, she objected at first, she's not objecting when we state the double bound on this and closing arguments, bringing up again that she, that police spoke with witnesses and developed a name, including the person that lived below Mr. Vitekdo, and didn't include this in the post-criminal motion. There was no reasonable, rational reason why an attorney should not be able to serve this issue and the investigation suffered prejudice because, again, the jury was allowed to consider very crucial evidence that it was his own sister that lived below the victim in this case. And Mr. Vitekdo's testimony was that he believed he'd seen the person before and that that person, he thought, stayed occasionally in an apartment below him. So for those reasons, I rise to the desk of the Court of Rehorses for DC's conviction and remain silent for further proceedings. Thank you, Your Honor. Where's Nick? We appreciate that. Mr. Vitekdo. Thank you, Your Honor. May it please the Court that we have counsel. A few record points. People vs. People was started in 1996, and it seems to suggest, the language of it seems to suggest, that it was a kind of a search that he would advise his counsel to use a kind of a challenge and that's between to have reversal. Subsequently, that People vs. People was decided by the Mayor of Dunlop Street which was discussed in the same case as People vs. People, which was, I think, discussed in the back. And it stated that the presumption being, as long as the defendant's absence does not prod the defendant's constitutional right, his presence is not, per se, a reversible error. So the question goes to whether the makeup of the jury was such that it was pretty prejudicial against the defendant. I don't know if it was both Peoples and Metcalfe, or at least in Metcalfe, because none of the jurors, none of the voir dire were actually selected as jurors, right? They said there couldn't be any prejudice because... Well, Metcalfe is the same case which goes to whether the primary challenges can be used in the case of... I'm sorry, whether the defendants have some sort of personal way of using the primary challenges or whether it's a trial strategy. Mr. Kerr, in reverse, in Metcalfe, I believe, was admitted to the jury. He was the one who said that he was the victim in the previous, or she was the victim in the previous case. She wasn't sure whether she could be fair or whether this would affect her ability to be fair in the case. And yet the trial counsel dismissed two others who did not have the same concerns and allowed the jurors to be on the jury. And the only Supreme Court said, that's fine, that it's a matter of trial strategy. It might not have been a good strategy, but it was a trial strategy nonetheless. Which kind of suggests that there's a tension between the Peoples and Metcalfe cases in which a defendant is not present during the voir dire. His ability to give input is really not... doesn't really matter, because it's a matter of trial counsel that decided to use that primary challenge. In this case, the admission was questioned back in chambers after she made her respondent known. She said back in chambers, she went, I misunderstood your question. I would give anybody an amendment. And that did the rehabilitation of her admission. As far as the question about the police officers and her sons, I think she was trying to express that she's not going to be treated equally. And that she wishes there an impartial jury. We also put out a brief that she answered all the other questions affirmatively that she understood the requirements that the state had. She agreed that she would follow the law, even if she did not think the law is as it should be. She agreed that the state had proven the defendant guilty. She agreed she would sign a guilty verdict if the state did not. She agreed she would sign a not guilty verdict. She said she believed she would be fair and impartial on both sides in the case. That's what she said in court in front of the defendant. The only thing that she apparently misunderstood was the question regarding the ability to judge, including the police officers. I also put out a brief that the defendant had heard the negative comment that she made, but he did not hear the comment made in the chambers that rehabilitated her position. That she could be fair and impartial. So if the defendant was going to advise his counsel to use a penalty challenge, it would seem that he would have done it based on his own personal knowledge. Again, counsel waived the defendant's right to be back in the chambers for a year. She put that on the record. She said that she talked to the defendant about everything that happened. There was no indication from the defendant's objecting to that. A similar right would suggest a jury waiver right in which counsel can make that representation. As long as the defendant does not object, it's considered sufficient. Wasn't the record made after all of the idea was completed? Yes. Yes, the record was made because it was made at a bar, and then a trial judge put it on the record, and the defense counsel said in an open court that she discussed it with the defendant. Right, but it seemed like she talked to him about what they had done in chambers. Right. So that's getting a waiver after the action had already been complete, right? I mean, is that a problem? Well, it can be an affirmation of the defense's agency, if you will, that you consider the person's actions and you don't object to them. But I thought that the waiver where she says that she waives the right actually happened in chambers. Well, it is, to look at the specific comments, the trial judge, I have, both have it in here, the jury is up in the room, I don't think I made a record of it, I asked if there was any justice, and both lawyers up here at the beginning of the jury selection asked if there was, I don't remember how to say it, asked if there was any justice, if it's okay, but we have in chambers meetings, is it okay, can I stop there, and she said yes, that's okay. So this was happening before jury selection, that she made the waiver when we acted with that. Now, her statement stating that she said that's correct, and I did discuss that with my client, and did tell her everything that happened back there, each time we went back there, which suggests that she discussed not going back in the chambers at that time. And that's one of the things that we were looking for. We don't know exactly when the person, the defense attorney, said this jury is okay, or this juror is okay, I accept this juror. We don't know, we know things happen in the chambers, right? Questions to the juror, potential juror. We know that ultimately they accepted that juror, but we don't know if in the chambers conversations, after they've had this exchange with the potential juror, whether or not the defense attorney asked the client, is this juror okay, here's what happened in chambers, is this juror okay? And then the defense attorney, she said this is okay, or if she just said it back in chambers. We don't know that, do we? I mean, we don't know it from this record, one way or the other. What the trial judge put on the record is just what you said, without exactly what was worded, right? Well, the judge, when he was making that record, wasn't sure exactly what the judge said, right? Correct. He was doing something like that. And I was actually going to say that in this term, but essentially, I asked him this, and he said yes. This is the way the judge specifically put it. It's what he basically said. Again, the closer in time you get to the indictment, the harder it will be, but this is what I think he said. Turning to the second argument, the evidence that was presented was, as defense counsel presented, I mean, said, it was the course of the investigation. Why did they put this defendant in the lineup? It was because they found out this information and confirmed it. It was all part of the steps taken in order to explain to the jury why the defendant's picture was in the lineup. And the case law says that hearsay statements can be made, or can be testified to, as long as it's discussed in the course of the investigation. The defendant, as Sotomayor was saying, is likely to be the person's juror. I would suggest that that was distinguishable, because in that case, the court said that hearsay was taken of the positive radio call describing the person who was the offender was irrelevant because the testimony of the police officers was that they had seen the defendant, personally seen the defendant, with the gun. So their testimony as to the hearsay wasn't part of the course of the investigation. It was truly hearsay. So I'm going to trigger his distinguishing. Even if the court finds that there was some error in the testimony, we suggest that contrary to the defendant's assertion, Mr. Spartato physically identified the defendant as the person who came out of his apartment, knew the defendant was around the complex. He even testified he had previous conversations with the defendant, even though he didn't know it was the defendant. So he clearly knew who the defendant was. He called, just when there wasn't an objection to it, there isn't an objection to an appeal, he called his neighbor to tell him that, oh, the guy from downstairs was just in my apartment. And then he immediately identifies the defendant within the police lineup. So even if you take out this evidence regarding how they came to put him in the lineup, it would still find the defendant guilty without reasonable doubt. Therefore, we suggest that there was no prejudice to the defendant. If there's no other questions, please respect the request of the court. I guess not. Thank you very much, Mr. Rado. Where's Nick? Your question, Justice O'Brien, about the case law in Iowa is that if a defendant is denied the right to be present at the law here, barring what I think this court has told you, which is a first-pronged claim to interpolistic balance, but absent that, then you have to show that the jury that then is serving is somehow prejudiced because the defendant is not impartial, and that is, I believe, the correct statement of the law. And I think that then it's important, because that's what happened, was that some of these jurors, there was multiple jurors, I think, like 16 jurors that the defendant was not present for, but they were interviewed in the hallway. Five of those jurors ended up serving on the jury. And during the law here, they were asked whether or not they could be fair and impartial, and the answers were, I believe so, I guess I could, I would hope so. And that was enough for the defendant court to say, well, we can't say that this jury was impartial, that the jury was not prejudiced against the defendant because they didn't give a clear statement that they could be fair and impartial. And although here the juror does say, well, yes, you can be fair and impartial, she contradicts that with a statement of the court saying that she's not going to be able to treat witnesses' testimony equally, including police officers. And then we have the added information that happens back in chambers, which the defendant's not present for. Her sons are police officers. And when she is asked a directed, pointed question of whether or not she can treat testimony of police officers and other witnesses equally, she does not directly answer that question. She says she raised her sons to be fair and impartial and to treat people equally of race, gender, creed. Were there any preempts left? I believe so, Your Honor. I can't remember exactly if they were used often, but at that point, yes, there were preempts. I mean, if I remember the record, there were preempts that were available. Yes, Your Honor, I don't remember the number, but I believe for sure they were from the defense side. There were still parameters that were left unused. And closely balanced. How do you define closely balanced pursuant to the case law? I mean, here you have a witness who IDs the person leaving the apartment, right? Correct. He identifies the person through a photo of the lineup eventually. He picks the picture up. He says to the police officers he's seen the person around before, but he doesn't give them a name. Also, his testimony, especially if he's running a task force. Which usually is corroborative of the identification of this other information. I believe it was corroborative for certain. And I think that the juror case that I cited in my reply brief demonstrates that. It was a 911 call where officers were called to an alley with a description of a person that matched the defendant with a gun. And what the jury report said when they reversed the defendant's conviction is that that information corroborated the officer's version of events. And here it's corroborating the victim's version of events here. He says, as the state has correctly stated, that I think the person lived downstairs. And then you have the knowledge of the defendant's sister is the one that lives downstairs. I think the jury easily could have taken that information, coupled it with Mr. Leclerc's testimony, and found that it had to be corroborated and that his observations were more accurate based on that information. So how does that work with whether or not it was closely balanced? I think you have, well, you have eyewitness testimony. You have one eyewitness that says that Mr. Leclerc was the person that spoke for him and was a part of that. Obviously, again, I think the court has looked at the entire record. There's no other information that links him other than what Mr. Leclerc said. And again, although he's saying it's the person I've seen around the apartment building, he doesn't have a name. I assume that there's other people around the apartment building you see often. And if I recall from the evidence, this person, as he's opening the door, is running past him down the hallway. So the jury, obviously, gets the instruction that part of it, when they're looking at credibility of the witness, is their ability to observe. So part of it would be, well, how quickly did Mr. Leclerc go see this person? Or what angle did he see him at? So they could have reflected on all of that. We have the information that the Fountain Sisters, the woman who lives below, that I think would have had cooperation to get Mr. Leclerc to those statements. I think you could also look at a closely balanced poem as the credibility of the residential burglary itself. Mr. Leclerc has said that he's running out of purse. He has nothing in his hands and nothing that's taken. Obviously, a burglary has to, a residential burglary has to be a residence with the intent to commit an offense. So there was no direct testimony. The intent to commit some crime within. A felony or a theft. Obviously, what the state argued was that there was substantial proof. But I think that the court would consider that as potentially close to ground evidence as well. To that specific element of the offense of residential burglary. One minute, please. Are there any other questions from the court? There was a crowbar or something left in there, wasn't there? Correct, Your Honor. A near piece of furniture. A near piece of furniture. Yeah, there was some sort of high bar crowbar. His door was damaged. That was located within, I think it was sitting on the table is where they located it. I believe they did process it for analysis. Okay, that's all I have on the video. Your Honor, we ask that you reverse Mr. Nguyen's conviction. Thank you, Mr. President. Thank you both for your arguments today. We will take this matter under advisement to bench with a written disposition.